RECORD NO. 10-4885

In The

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellant,*

v.

## RICHARD TIMOTHY WEAVER; KIRK NORMAN DEAN; ELMER LUKE MOORE; KIM H. BERRYMAN; STEVEN LYNN KNIGHT; BRIAN SCOTT MITCHELL; MICHAEL LEE PHELPS,

*Defendants – Appellees,*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

————————

## BRIEF OF APPELLEES

————————

**Deirdre H. Purdy**
ATTORNEY AT LAW
**407 Jarvis Road**
**Chloe, WV 25235**
**(304) 655-7232**

*Counsel for Richard Weaver*

**James M. Cagle**
ATTORNEY AT LAW
**1200 Boulevard Tower**
**1018 Kanawha Boulevard, E.**
**Charleston, WV 25301**
**(304) 342-3174**

*Counsel for Kirk Dean*

**Carl James Roncaglione, Jr.**
ATTORNEY AT LAW
**1018 Kanawha Boulevard, E.**
**Suite 401**
**Charleston, WV 25301**
**(304) 342-3945**

*Counsel for Luke Moore*

**Richard W. Weston**
WESTON LAW OFFICE
**635 Seventh Street**
**Huntington, WV 25701**
**(304) 522-4100**

*Counsel for Kim Berryman*

**Mark L. McMillian**
ATTORNEY AT LAW
**Boulevard Tower**
**1018 Kanawha Boulevard, E.**
**Suite 900**
**Charleston, WV 25301**
**(304) 720-9099**

*Counsel for Steven Knight*

**Roger D. Curry**
CURRY AMOS & ASSOCIATES
**213 Locust Avenue**
**Fairmont, WV 26554**
**(304) 368-1000**

*Counsel for Brian Mitchell*

**John A. Proctor**
PROCTOR LAW OFFICES, PLLC
**422 10th Street,**
**Suite 4**
**Huntington, WV 25701**
**(304) 781-5294**

*Counsel for Michael Phelps*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................. iii

ISSUE PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE...............................................................1

STATEMENT OF FACTS ....................................................................2

SUMMARY OF THE ARGUMENT .....................................................4

ARGUMENT .......................................................................................5

    A.    The plain language of 18 U.S.C. § 922(h) prohibits an employee of a prohibited person from receiving, possessing or transporting any firearm or ammunition in the course of that employment ..........................................................................5

    B.    If "employ" in § 922(h) can mean either "hire or "make use of," then the statute is ambiguous, in which case the legislative history must be consulted ...............................................11

        1.    The legislative history leads to the conclusion that § 922(h) refers to for-hire employment .......................................11

        2.    If the Court, after considering the legislative history, still discerns ambiguity in the statute, the rule of lenity requires the narrower interpretation:  "employ" in § 922(h) refers to for-hire employment .......................................13

        3.    The District Court's interpretation that § 922(h) refers to for-hire employment, rather than to a prohibited person "using" another individual to carry firearms, is further mandated by the rule requiring that constitutional questions be reached only as a last resort .................................15

CONCLUSION ..................................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Air Line Pilots Ass'n, Intern. v. U.S. Airways Group, Inc.,*
609 F.3d. 338 (4th Cir. 2010) ........................................................6

*Am. Tobacco Co. v. Patterson,*
456 U.S. 63 (1982)........................................................................6

*Bell v. United States,*
349 U.S. 81 (1955)......................................................................14

*Caron v. United States,*
524 U.S. 308 (1998)....................................................................14

*Connecticut Nat. Bank v. Germain,*
503 U.S. 249 (1992)....................................................................13

*Morrissette v. United States,*
342 U.S. 246 (1949)......................................................................8

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992)....................................................................10

*Perrin v. United States,*
444 U.S. 37 (1979)...................................................................5, 14

*Phila. & R.R. Co. v. Derby,*
55 U.S. (14 How.) 468 (1853) ......................................................8

*Shipbuilders Council of America v. U.S. Coast Guard,*
578 F.3d 234 (4th Cir. 2009) ........................................................9

*Skilling v. United States,*
130 S. Ct. 2896 (2010)................................................................13

*United States v. Childress,*
    104 F.3d 47 (4th Cir. 1996) ....................................................................5, 11

*United States v. Universal C.I.T. Credit Corp.,*
    344 U.S. 218 (1952)............................................................................14

*Wheeler v. Newport News Shipbuilding and Dry Dock Co.,*
    __ F.3d __, 2011 WL 541805 (4th Cir. 2011)..................................7

**Statutes:**

18 U.S.C. § 921 ....................................................................................5

18 U.S.C. § 922(g)(1)..................................................................2, 5, 13

18 U.S.C. § 922(h) ........................................................................*passim*

18 U.S.C. § 922(k) .............................................................................13

18 U.S.C. § 1202..............................................................................5, 11

18 U.S.C. § 1202(a) ............................................................................12

18 U.S.C. § 1202(b) ............................................................................12

**Constitutional Provisions:**

U.S. Const. Amend. I .....................................................................15, 16

U.S. Const. Amend. II.....................................................................15, 16

**Other:**

2A *Sutherland Statutory Construction* § 47.29 .......................................8

114 Cong. Rec. 13869.........................................................................12

114 Cong. Rec. 14773.........................................................................12

Black's Law Dictionary 378 (8th Ed. 2004)............................................9

Black's Law Dictionary 502 (6th Ed. 1991).......................................................10, 11

Joseph Story, Commentaries on the Law of Agency § 308 (1839)..........................8

Omnibus Crime Control and Safe Streets Act of 1968,
Pub. L. No. 90-351, 82 Stat. 197 ..............................................................................11

Pub. L. No. 99-308, 100 Stat. 459 ..........................................................................11

## ISSUE PRESENTED FOR REVIEW

18 U.S.C. § 922(h) PROHIBITS FIREARM POSSESSION WHILE KNOWINGLY "EMPLOYED FOR" A PROHIBITED PERSON AND "IN THE COURSE OF SUCH EMPLOYMENT."

QUESTION PRESENTED: WHETHER THE DISTRICT COURT CORRECTLY HELD THAT "EMPLOYED" IN § 922(h) REQUIRES A FOR-HIRE EMPLOYER-EMPLOYEE RELATIONSHIP.

## STATEMENT OF THE CASE

This case involves the correct interpretation of 18 U.S.C. § 922(h), which prohibits firearm possession while knowingly "employed for" a prohibited person and "in the course of such employment." The district court held that "employed" and "employment," as used in the plain language of the statute, refer to a for-hire employer-employee relation. (J.A. 591-604.) The court further concluded that such relationship is proved by payment of wages or some form of tangible compensation. (J.A. 598-99.)

The Government acknowledged on the record at Richard Weaver and Elmer Moore's plea hearings[1] that it could not prove that the defendants were so employed. (J.A. 607, 610, 628-29.) The United States then asked the district court to dismiss the two counts based on § 922(h), Counts 19 and 21, so the case would be in a procedural posture for this appeal. (J.A. 610-13.) Weaver and Moore

---

[1] Weaver and Moore had entered conditional pleas to Count 19, conditioned on their right to appeal an adverse interpretation of 18 U.S.C. § 922(h) by the trial court. (J.A. 602.)

agreed to this procedure because their plea agreements specifically contemplated a resolution of the meaning of "employed" by this Court.

## STATEMENT OF FACTS

This case presents a pure question of law: the construction and interpretation of 18 U.S.C. § 922(h), a firearms statute. 18 U.S.C. 922(h) provides in relevant part:

> It shall be unlawful for any individual, who to that individual's knowledge and while being employed for any person described in paragraph (g) of this section,[2] in the course of such employment –
>
> > (1)  to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce[.]

*Id.*

Weaver offers the following Statement of Facts, to which he stipulated at his plea hearing:

> Mr. Weaver was . . . a member of the [Pagans Motorcycle] club, [Floyd] Moore was the vice president, [and] Moore was a convicted felon.
>
> He [Weaver] knew that Moore was a convicted felon. He knew Moore wanted him to carry a gun and . . . on at least one occasion, Mr. Weaver carried a gun at the [PMC] clubhouse because Moore wanted him to.

(J.A. 608.)

---

2   Subsection (g) lists categories of individuals prohibited from transporting, receiving, or possessing firearms. A convicted felon is one such prohibited person. 18 U.S.C. § 922(g)(1).

2

The United States has no evidence that Weaver or other defendants below were ever employed for Floyd Moore in a for-hire employer-employee relationship.  (J.A. 598-99, 607, 610, 628-29.)  Instead, the Government's theory is that defendants were employed, that is, "used," by a prohibited person who was "their superior in the PMC hierarchy" and tasked them to possess and carry firearms.  (J.A. 448-49.)

The Government's Statement of Facts consists of little but allegations[3] and hearsay.[4]  Most of the Government's "facts" are irrelevant to the pure question of law presented.  By its statement of facts, the Government seeks to highlight its original charges against these defendants and distract from the question of law presented.

---

[3]  The numerous citations to J.A. 401-471 in the Government's Statement of Facts refer to allegations from the Indictment, not facts.  The parties agree that Floyd "Jesse" Moore was a national vice-president of the PMC and is a convicted felon.

[4]  In its Statement of Facts, the Government presents a statement, which it alleges was made by Weaver, that looking out for Floyd "Jesse" Moore was his "job." The statement was allegedly recorded by an informant.  For support, the Government cites the AUSA reading this purported statement aloud in a motions hearing.  (U.S. Brief at 4-5 citing J.A. 482.)  This statement was never authenticated, never offered for admission, and never subject to cross-examination. This statement is simply hearsay, offered by counsel for the Government for the truth of the matter asserted.  The Government also relies upon this hearsay statement in its brief at 12, n.7 and 20.

## SUMMARY OF THE ARGUMENT

Under 18 U.S.C. § 922(h), it is criminal for one person "employed for" a prohibited person to carry a firearm "in the course of such employment." When one person is employed for another, the plain language refers to an employment relationship; it does not mean that one person is using another, as one might employ a tool. If there are any doubt, the legal term of art, "course of employment," which for more than 150 years has referred to for-hire employment, can only be read to indicate an employer-employee relationship. Even if this Court were to find the statute could plausibly be read with another meaning, that would simply indicate that the statute is ambiguous. To parse an ambiguous statute, the Court must consider the legislative history, which unequivocally refers to stopping "employers" who cannot carry firearms from "hiring" others to carry them. Both the rule of lenity and the mandate to avoid constitutional questions wherever possible would also require the district court's narrower interpretation: § 922(h) criminalizes an employee possessing (receiving, transporting) a firearm in the course of employment by an employer who is a prohibited person.

## ARGUMENT

**A.     The plain language of 18 U.S.C. § 922(h) prohibits an employee of a prohibited person from receiving, possessing or transporting any firearm or ammunition in the course of that employment.**

18 U.S.C. 922(h) provides in relevant part:

It shall be unlawful for any individual, who to that individual's knowledge and while being employed for any person described in paragraph (g) of this section,[5] in the course of such employment –

> (1)     to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce[.]

No court has addressed the meaning of "employ" or "course of such employment" in § 922(h). The question is one of first impression in the federal courts.[6]

Courts first look to the plain language of a statute to determine its scope. *United States v. Childress,* 104 F.3d 47, 51 (4th Cir. 1996). "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42 (1979). The terms "employ," "employee," "employment" and "course of employment" are not defined in § 921,

---

[5]    Subsection (g) lists categories of individuals prohibited from transporting, receiving, or possessing firearms. A convicted felon is one such prohibited person. 18 U.S.C. § 922(g)(1).

[6]  The district court set out the history of the statute (J.A. 594) and reported that it was also unable to locate any court that had expounded on the meaning of § 922(h) or its predecessor statute, 18 U.S.C. § 1202.

5

which supplies the definitions for Chapter 44 of the United States Code, including § 922(h).

Judicial analysis then turns to the "text of the statute itself and must 'assume that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Air Line Pilots Ass'n, Intern. v. U.S. Airways Group, Inc.,* 609 F.3d. 338, 341 (4th Cir. 2010) (quoting *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982)).  Standing alone, the phrase "employed for" ordinarily takes as its subject a tool and as its object a purpose, not a person.  For example, a shovel could be *employed for* digging a hole and a match might be *employed for* starting a fire. This is the basis and essence of the Government's argument:  "employed for" means "used for a purpose" – and there the Government's analysis ends.[7]

Looking only at the phrase "employed for," however, eliminates critical context.  The full statutory phrase refers to an individual (the defendant) "being employed for any [prohibited] person."  When one person employs another person, one person is ordinarily the employer and the other person the employee.  More commonly, we would say "Joe is *employed by* Mary."  Yet the phrase "Joe is *employed for* Mary" is also understandable, and native speakers would not take

---

[7] The United States makes much of the fact that "employ" and "employment" can mean different things in other contexts and that sometimes "employ" means "used for a purpose."  (U.S. Br. at 13-19.)  The issue before the Court, however, is the meaning of these terms in 18 U.S.C. § 922(h).  The fact that "employ" can have another meaning in another place is not relevant to the inquiry of the meaning of the language in this statute.

6

that phrase to mean that Mary was using Joe for some purpose. If, for example, Mary sent Joe shopping for her, one would not say that Joe was *employed for* Mary in shopping – unless Joe was Mary's employee (maybe her personal shopper), in which case the phrase makes perfect sense. The district court made this point clear by inserting names into the text of § 922(h): "'Joe, while being employed for Mary, and in the course of this employment, possessed a firearm.' A listener hearing this statement naturally would assume that Joe worked for Mary and that he carried a gun as part of his job." (J.A. 596.) The district court correctly determined that, in this syntactic context, "employed for" refers to an employee-employer relationship.

Section 922(h) contains two "employment" phrases. A defendant who is employed for a prohibited person and possesses a firearm "in the course of such employment" violates § 922(h). "Such employment" refers back to the employed-for relationship and so must take the same meaning. This is true as a matter of both grammar and statutory construction: a term used more than once in the same provision should be given the same meaning, if possible. *Wheeler v. Newport News Shipbuilding and Dry Dock Co.,* __ F.3d __, 2011 WL 541805 (4th Cir. 2011).

In addition, "course of employment" is a legal term of art restricted to for-hire situations.[8]

> "[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.

*Morrissette v. United States,* 342 U.S. 246, 263 (1949); *see also* 2A *Sutherland Statutory Construction* § 47.29 ("In the absence of legislative intent to the contrary, or other overriding evidence of a different meaning, technical terms or terms of art used in a statute are presumed to have their technical meaning.") (footnotes omitted).

The district court's elucidation of this term of art cannot be improved:

> "Course of employment" is a legal term of art with venerable roots in the law of agency and employment. *See, e.g., Phila. & R.R. Co. v. Derby,* 55 U.S. (14 How.) 468, 486 (1853); Joseph Story, Commentaries on the Law of Agency § 308 (1839). . . . Although the term can have slightly different meanings in different contexts, "course of employment" can be defined generally as "[e]vents that occur or circumstances that exist as part of one's employment; esp., the time during which an employee furthers an employer's goals

---

[8]  The United States ignores the phrase "in the course of such employment," presumably because this phrase, which is a legal term of art with a definite meaning, undoes the Government's analysis. "Course of employment" refers to for-hire employment and cannot mean "in the course of such *use"* without a definitional statement that sets or requires the unusual alternative meaning.

through employer-mandated directives."  Black's Law Dictionary 378
(8th Ed. 2004). . . .

(J.A. 597.)

To respect the plain language and ordinary meaning of the statute, one must read "employ" and "employment" to refer to for-hire employment. The Government's proposal, to substitute "use" for "employ," perverts the syntax describing one person *employed for* another and ignores the long-established legal meaning of "course of employment." [9]

The district court proposes that the payment of wages or other form of tangible compensation is a simple test of the employer-employee relation.  (J.A. 599.)  This reasonable suggestion is supported by the Supreme Court's summary of the general common-law meaning of "employee."  Among the facts relevant to the inquiry whether one is an employee are the following:  "whether the *hiring party* has the right to assign additional projects to the *hired party*; the extent of the *hired party's* discretion over when and how long to work; . . . the *hired party's* role in hiring and paying assistants; whether the work is part of the regular business of the

---

[9]  The United States' analysis also violates the rule of superfluity.  A "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Shipbuilders Council of America v. U.S. Coast Guard,* 578 F.3d 234, 244 (4th Cir. 2009) (citations omitted).  According to the United States' analysis, "course of employment" must be read to mean "course of use."  If it is criminal for one person to *use* another to carry a firearm, then obviously the crime occurs during the "course of *use.*"  The Government's reading renders the phrase "course of employment" superfluous.

*hiring party*; whether the *hiring party* is in business; . . . and the tax treatment of the *hired party*." (J.A. 599 n.6 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)) (emphasis added) (other citation omitted)). A central feature of employment is that one party *hires* the other. In an arrangement between people, *hire* means "to arrange for the labor or services of another for a stipulated compensation." Black's Law Dictionary 502 (6th Ed. 1991).

Compensation is a simple and easily determined identifying characteristic of employment; the district court's suggestion should be adopted. However, if this Court rejects the payment-of-tangible-compensation test for employment, that does not affect the district court's correct analysis of the statute, which refers to an employer-employee relationship between the defendant and the prohibited person, however that relationship ultimately is proved.

The plain language of 18 U.S.C. § 922(h) states: it is a crime for an employee, knowing his employer cannot legally possess a firearm, to possess (receive, transport) a firearm in the course of that employment. This Court should affirm the district court's holding.

**B.     If "employ" in § 922(h) can mean either "hire or "make use of," then the statute is ambiguous, in which case the legislative history must be consulted.**

An ambiguous statute is one that can reasonably be read with two or more meanings.[10]  Section 922(h) is not ambiguous, but has the plain meaning explained above.  Nevertheless, if this Court should find that the statute could plausibly be read to mean that a person violates the law if s/he is used by a prohibited person and possesses a firearm in the course of that use, the next step is to consult the legislative history.  "[T]he plain language of a criminal statute controls, unless (1) an ambiguity exists in the language of the statute, or (2) a literal reading of the statute would contravene the legislative intent." *United States v. Childress,* 104 F.3d 47, 52 (4th Cir. 1996).

**1.     The legislative history leads to the conclusion that § 922(h) refers to for-hire employment.**

Senator Long was the sponsor and floor manager of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90-351, 82 Stat. 197.  This Act was originally codified at 18 U.S.C. § 1202.  Section 1202 was repealed in 1986.[11]

---

[10]  "Ambiguity exists if reasonable persons can find different meanings in a statute, document, etc; when good arguments can be made for either of two contrary positions to a meaning of a term in a document; when application of pertinent rules of interpretation to an instrument as a whole fails to make certain which one or two or more meanings is conveyed by the words employed by the parties."  Black's Law Dictionary 52 (6th Ed. 1991).

[11]  Section 1202 was repealed by Pub. L. No. 99-308, 100 Stat. 459.

The terms of § 1202(a) were incorporated into 18 U.S.C. § 922(g) and the terms of 1202(b) became § 922(h).

Speaking in support of the amendment that ultimately became § 922(h), Senator Long said the provision sought to prevent "the underworld element," which was prohibited from possessing firearms, from proceeding "to *hire* bodyguards, triggermen, and goon squads to go out and do their dirty work for them." 114 Cong. Rec. 13869 (emphasis added). "[S]ome members of the Mafia may have a number of gun carrying lieutenants *working for them* who would otherwise be permitted to possess firearms."  According to the Congressional Record, the law would prohibit "persons *employed by another*" from possessing a firearm "in the *course of his employment*" if he knows his "*employer*" is a prohibited person.  114 Cong. Rec. 14773 (emphasis added).  If a person is "in the *employ* of a person who is not permitted to possess a firearm then the *employee* would not be permitted *in the performance of his employment* to possess a firearm." *Id.* (emphasis added).  As the district court observed, the legislative history is unequivocal in using the language of employer-employee for-hire employment.  (J.A. 598 n.5.)

The United States asks the Court interpret this statute so broadly that it prohibits any "crook and gangster, racketeer and fugitive from justice from being able to . . . in any way come in contact with firearms of any kind."  (U.S. Br. 23

(citing one court's analysis of a different section of the law, § 922(k)) (citation omitted.)  However, the statute that the United States seeks to enforce is not the one Congress adopted.  The preeminent canon of statutory interpretation requires a court to presume that the "legislature says in a statute what it means and means in a statute what it says there."  *Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992).  The statute at hand makes no reference to crooks, gangsters, racketeers or fugitives, but instead refers to those prohibited from possessing firearms.  Such prohibited individuals are not necessarily crooks, gangsters, *et cetera;* they may be fully rehabilitated, honest, hard-working citizens.  Nonetheless, they cannot possess firearms, 18 U.S.C. 922(g)(1), and they cannot employ (hire) others to carry firearms for them in the course of such employment, 18 U.S.C § 922(h).

The legislative history reinforces the plain meaning of § 922(h), which makes it a crime for an employee of a prohibited person to possess a firearm in the course of such employment.

> **2.    If the Court, after considering the legislative history, still discerns ambiguity in the statute, the rule of lenity requires the narrower interpretation:  "employ" in § 922(h) refers to for-hire employment.**

Ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.  *Skilling v. United States,* 130 S. Ct. 2896 (2010).  As Justice Frankfurter noted, "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."

*Bell v. United States,* 349 U.S. 81, 83 (1955). A court "should not derive criminal outlawry from some ambiguous implication." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221-222 (1952).

Before the rule of lenity will apply, there must be a "genuine ambiguity." *Perrin v. United States,* 444 U.S. 37, 49 n.13 (1979). No such ambiguity exists when "the ambiguous reading relied on is an implausible reading of the congressional purpose." *Caron v. United States,* 524 U.S. 308, 316 (1998). The Government's attempt to extend this statute based on Senator Long's references to the Mafia and the "underworld element" who hire gunmen is unavailing, precisely because it ignores the plain language of the statute Congress drafted and twists that language to try to serve a wider purpose: preventing bad people from using others to carry firearms for them. Unfortunately for the Government's position, that is not what § 922(h) says. Even if "employ" were read to mean "use," the statute makes no reference to bad people, criminals, the underworld, gang leaders, or underlings, all terms the Government wishes to insert into the meaning of this statute.

If it were necessary to apply the rule of lenity, however, the narrower meaning urged by Appellees would prevail. Only those employees of prohibited persons, who know their employer cannot possess a firearm, and who possess

(receive, transport) a firearm in the course of such employment can be guilty of violating § 922(h).[12]

> **3.    The District Court's interpretation that § 922(h) refers to for-hire employment, rather than to a prohibited person "using" another individual to carry firearms, is further mandated by the rule requiring that constitutional questions be reached only as a last resort.**

As the district court opinion observes, constitutional issues raised by this statute, as applied by the United States, were fully briefed for adjudication before trial. (J.A. 601- 603.) Weaver and other defendants argued that the Government's interpretation of the statute as applied burdened both their First and Second Amendment rights.

The Government charged that these defendants were "employed for" Floyd Moore, a convicted felon, because they were in a social club together and Moore, as vice president, outranked them. According to the Indictment, Moore would "order the other defendants to perform the tasks he assigned, including the task to possess and carry firearms, and that the other defendants did obey and carry out these orders. . . ." (J.A. 448-49.)

The First Amendment right of association is burdened if, before joining a club, one must check the membership lists for prohibited persons who could

---

[12]   The district court recognized this point and stated that "if the Court had not found the meaning to be plain, as between the constructions advanced by the Government and by the Defendants [Appellees here], application of the rule of lenity would compel the adoption of Defendants' construction. (J.A. 598 n.5.)

15

conceivably *use* one's ability to carry firearms. The Second Amendment right to possess and carry firearms for self-protection is burdened if virtuous citizens cannot carry or use their legal firearms without fear that a prohibited person may have an ulterior use for the otherwise constitutionally-protected act. Note that the statute does not require that the defendant know s/he is being used, nor does it require that the use be for a wrongful purpose.

Two examples demonstrate the constitutional difficulties: (1) if a convicted felon, knowing that I always legally carry a firearm, invites me to attend a meeting where, unbeknownst to me, he fears trouble, is my association criminal under § 922(h)? (2) if my neighbor, whom I know to be a convicted felon, asks me to shoot a rabid fox in his backyard because I can legally carry a gun and he cannot, is my gun use for him criminal under § 922(h)? The district court's plain language interpretation avoids the questions whether the statute (as the Government interprets it) is void for vagueness or unconstitutionally burdensome under the First and Second Amendments.

This brief discussion is intended only to show that there are potential constitutional issues that are avoided if "employed" is construed to mean for-hire employment in an employee/employer relationship. Under the narrower construction, only if a defendant knows he is hired by a prohibited person to carry a firearm in the course of that employment is the act criminal.

16

## CONCLUSION

Under the plain language of 18 U.S.C. § 922(h) "employ" means for-hire employment. All relevant canons of statutory interpretation are satisfied by this analysis. On the other hand, the Government's proposed reading that "employ" means "use" ignores the fact that "course of employment" is a term of legal art and would, instead, render that term superfluous. Even if there were ambiguity, both the legislative history and the rule of lenity would require the for-hire employment interpretation. This Court should affirm the district court's construction of the statute.

Respectfully submitted,

/s/ Deirdre H. Purdy
Deirdre H. Purdy (WVSB #7779)
407 Jarvis Road
Chloe, WV 25235
deirdre.purdy@gmail.com
304.655.7232 (phone)
304.551.0055 (fax)

*Counsel for Richard Weaver*

James M. Cagle
1200 Boulevard Tower
1018 Kanawha Boulevard, E.
Charleston, WV 25301

*Counsel for Kirk Dean*

17

Carl James Roncaglione, Jr.
Suite 401
1018 Kanawha Boulevard, E.
Charleston, WV 25301

*Counsel for Elmer Luke Moore*

Richard W. Weston
WESTON LAW OFFICE
635 Seventh Street
Huntington, WV 25701

*Counsel for Kim Berryman*

Mark L. McMillian
Ste. 900, Boulevard Tower
1018 Kanawha Blvd., E.
Charleston, WV 25301

*Counsel for Steven Knight*

Roger D. Curry
CURRY AMOS & ASSOCIATES
213 Locust Avenue
Fairmont, WV 26554

*Counsel for Brian Mitchell*

John A. Proctor
PROCTOR LAW OFFICES, PLLC
422 Tenth Street, Ste. 4
Huntington, WV 25701

*Counsel for Michael Phelps*

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this Appellee's brief contains <u>3,961</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally-spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.


<u>/s/ Deirdre H. Purdy</u>
Counsel for Appellant

Dated:  April 1, 2011

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 1, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Steven I. Loew
Assistant United States Attorney
300 Virginia Street, East, Rm. 4000
Charleston, WV 25301
Steven.loew2@usdoj.gov

*Counsel for the Appellant*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ *Laura C. Bunton*
Laura C. Bunton
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219